UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH R. WIERCKZ,

      Plaintiff,                              Hon. Paul L. Maloney

v.                                                Case No. 1:25-cv-547

GREENSTATE CREDIT UNION,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Joseph R. Wierckz has sued Defendant Greenstate Credit Union invoking the Court's federal question jurisdiction and diversity jurisdiction. He alleges claims of breach of contract, unjust enrichment, violation of his right to due process, retaliation for assertion of rights, violation of the Fair Debt Collection Practices Act (FDCPA), securities fraud/wire fraud, accounting and declaratory relief, and breach of fiduciary duty.

Presently before me is Greenstate's Motion for Judgment on the Pleadings or Summary Judgment (ECF No. 20), which I consider as a Rule 56 motion as Wierckz has had the opportunity to file an affidavit/declaration with his response, and Wierckz's Motion for Preliminary Injunction. (ECF No. 17.) The motions are fully briefed and ready for decision. For the reasons that follow, pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** Greenstate's motion, **DENY** Wierckz's motion as **moot**, and **DISMISS** Wierckz's amended complaint **with prejudice**.

**I. Facts**

Wierckz does not claim to be a sovereign citizen or use that term in his amended complaint. Nonetheless, his actions and amended complaint "bear[ ] all the hallmarks of the 'sovereign

citizen' theory that has been consistently rejected by the federal courts as an utterly frivolous attempt to avoid the statutes, rules, and regulations that apply to all litigants, regardless of how they portray themselves." *Williams v. Georgia*, No. 5:21-CV-439, 2022 WL 568338, at *2 (M.D. Ga. Feb. 24, 2022). Wierckz's action is thus frivolous and subject to dismissal. *See Trevino v. Florida*, 687 F. App'x 861, 862 (11th Cir. 2017) (per curiam) (finding the plaintiff's sovereign citizen theory to be "frivolous" and "clearly baseless"); *United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir. 1993) (rejecting sovereign citizen argument as "shop worn" and frivolous); *Cook v. Kellogg Cmty. Credit Union*, No. 1:23-cv-843, 2024 WL 3607638, at *2 (W.D. Mich. June 26, 2024), *report and recommendation adopted*, 2024 WL 3594638 (W.D. Mich. July 31, 2024) ("In short, arguments based on sovereign citizen theories have been uniformly rejected by the federal courts for decades and should be summarily dismissed as frivolous.").

On April 4, 2019, Oxford Bank & Trust loaned Wierckz $64,420.50 to finance his purchase of a 2018 Clayton Double Deal 28x64 manufactured home, serial number WK1106973IN-AB, with all appliances and shed. Wierckz granted Oxford Bank & Trust a security in interest in the manufactured home to secure repayment of the loan. (ECF No. 10-3 at PageID.63–68; ECF No. 20-2 at PageID.211.) Greenstate is the successor-in-interest to Oxford Bank & Trust with respect to manufactured home loan and security interest. (*Id.*) On April 15, 2022, Greenstate loaned Wierckz $47,014.87 to refinance his acquisition of a 2017 GMC Sierra 1500 pickup truck. (ECF No. 10-3 at PageID.58–62; ECF No. 20-2 at PageID.11.) Wierckz granted Greenstate a security interest in the pickup truck to secure repayment of the loan. (ECF No. 10-3 at PageID.60–63.)

In early 2025, Wierckz ran into financial difficulty and ceased paying both loans. (ECF No. 10-4 at PageID.69 ("At present, the Agent is encountering significant financial challenges, which have hindered my ability to effectively act on behalf of the Principal.").) Wierckz made his

last payment on the manufactured home on January 16, 2025, and made his last payment on the pickup truck on February 19, 2025. (ECF No. 20-2 at PageID.211.) Wierckz made no further payment or arrangement to pay the debts in lawful United States currency or other form of acceptable payment. Instead, on March 11, 2025, he mailed a document to Greenstate titled "Proposed Amendment to Contracts" which proposed a so-called modification of the two loans using a "thoughtful and strategic deployment of the pledged Security Interest to eliminate all outstanding debts and liabilities with Green[state] . . . ." (ECF No. 10-4 at PageID.69.) In short, under Wierckz's proposal, Greenstate would receive nothing of value, and Wierckz would receive the manufactured home and pickup truck free and clear of Greenstate's valid liens. Wierckz requested a "formal acknowledgement of this proposal" within ten days. (*Id.* at PageID.70.) "[Wierckz enclosed an] executed . . . durable power of attorney from himself to himself, a maneuver that does not make sense in law or practice until one understands that sovereign citizens believe they each possess two separate identities—an artificial "straw man," who has a birth certificate, and a real natural person who is not subject to government control." *Harrison v. Iriarte*, No. 1:23-CV-141, 2024 WL 4360626, at *2 (N.D. Miss. Aug. 6, 2024), *report and recommendation adopted*, 2024 WL 4363236 (N.D. Miss. Sept. 30, 2024). Like the sovereign citizen plaintiff in *Harrison*, Wierckz used normal capitalization for the agent-half of his split personality and all capitals for the principal-half of his split personality. (ECF No. 10-5.)

Unsurprisingly, Greenstate did not respond to Wierckz's proposal. Instead, on March 25, 2025, and March 28, 2025, it emailed Wierckz, offering to discuss his accounts and advising him that decisions would be made on his behalf if he did not respond. (ECF Nos. 10-6 and 10-7.) On March 31, 2025, Wierckz sent Greenstate a document titled "Notice of Claim to Interest – 1st Attempt," using the same sovereign citizen Principal/Agent language from his prior submissions

3

and demanding that Greenstate "ensure that the Principal's FULL balances are allocated to the correct Account Numbers . . . for the purpose of facilitating set-off." (ECF No. 10-8.) Wierckz imposed a "strict timeframe of no more than five (5) business days" following Greenstate's receipt of the notice to respond and/or accept his proposal. Again, and unsurprisingly, Greenstate did not respond to Wierckz's notice.

On April 4, 2025, Greenstate again reached out to Wierckz by email stressing the importance for him to contact Greenstate about his delinquent loans. Wierckz responded by asking that his accounts be handled by Greenstate's CFO and noting that the documents he had recently submitted were important to ongoing discussions. (ECF No. 10-9.) On April 16, 2025, Greenstate's Chief Legal Officer responded to Wierckz by letter: (1) advising him to contact Greenstate if he was having difficulty making his monthly payments; (2) declining to respond to Wierckz's recent submissions but noting that courts had repeatedly rejected the arguments/theories that Wierckz had asserted; and (3) advising Wierckz to seek a licensed attorney who could provide him competent advice. (ECF No. 10-10.) Wierckz did not do any of these things; instead, on April 21, 2025, he sent Greenstate a document titled "Notice of Claim to Interest – Opportunity to Cure 2nd Attempt," again instructing Greenstate "to ensure that the Principal's FULL balances are allocated to the correct Account Numbers . . . for the purpose of facilitating set-off." (ECF No. 10-11.) He apparently enclosed a copy of the manufactured home and pickup truck loan documents with the words "Accepted for Deposit" and "Pay to the Order of Bearer," and the loan amounts printed at the bottom.

Greenstate reached out to Wierckz one final time on April 28, 2025, to discuss his delinquent accounts. Wierckz responded, "Per the terms outlined in [the Notice of Claim to Interest], the matter in question should have resulted in the account being zeroed." (ECF No. 10-

4

12.) On or about May 8, 2025, after having mailed Wierckz two repossession warnings, Greenstate repossessed the pickup truck. (ECF No. 10 at PageID.46; ECF No. 20-2 at PageID.212.) The wholesale value of the truck is less than $28,500—about $7,500 less than Wierckz owes on the loan. (*Id*).

## II.  Discussion

### A.  Greenstate's Summary Judgment Motion

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

As noted, Wierckz's entire action is predicted on well-worn and utterly discredited sovereign citizen arguments. His particular theory seems to be that when a lender such as Greenstate loans money to a borrower to finance a purchase and receives a security interest in the collateral to secure the loan, the security interest generates value in an amount corresponding to the loan balance, which is placed in an account for the debtor, or in sovereign-citizen speak, the Principal-half of the sovereign citizen's split personality. Under this theory, the debtor may simply demand that the lender apply the balance of this fictious account to the loan balance, thereby

5

erasing the debtor's liability for the loan. Of course, this is nonsense, as the security interest is simply the means of securing the lender's rights in the collateral to ensure payment of the loan if the borrower defaults, which is what Wierckz did.

Greenstate contends that this case is strikingly similar to *Slaughter v. First American Bank*, No. 24-CV-75, 2024 WL 5238632 (E.D. Wis. Dec. 27, 2024). There, as here, the plaintiff, Slaughter, sent the lender a "Notice to Claim Interest." The court explained that this notice

> instructed the CFO (presumably chief financial officer) "to use the Tender of payment for setoff and to communicate through writing within 5 business days after the receipt of the notice of any discrepancies and if there is no communication is made then [the plaintiff] can assume the aforesaid instructions have been completed." *Id.* This "Notice" stated that "I SLAUGHTER, ANTON-D/Agent here on behalf of ANTON SLAUGHTER/Principal I hereby accept All Titles, All Rights, All Interest, and Guaranteed Equity owed to the Principal." *Id.* The plaintiff alleges that he has received no communication from the CFO; he says that on December 21, 2023, he followed up with a "2nd Notice/Tender" and, on January 3, 2024, a "Final Notice" but received no response from the CFO. *Id.*

*Id.* at *2. *Slaughter* also tracks this case in that the plaintiff's vehicle was repossessed shortly after the plaintiff filed his complaint. *Id.* The court surmised that the plaintiff was attempting to assert the "vapor money" theory of debt, which numerous federal courts, including this one, have rejected as frivolous. *Id.* at *3; *see Marvin v. Capital One*, No. 1:15-cv-1310, 2016 WL 4548382, at *5 (W.D. Mich. Aug. 16, 2016), *report and recommendation adopted*, 2016 WL 4541997 (W.D. Mich. Aug. 31, 2016) (noting that the plaintiff's vapor money theory had been routinely rejected by the courts). Although Wierckz does not purport to rely on a vapor money theory, the facts here are really no different than those in *Slaughter*:

> As for the complaint itself, it does not state a claim for which a federal court may grant relief. It appears from the materials submitted by the plaintiff that he obtained an auto loan from the defendant, that rather than making payments in the required amount of U.S. currency the plaintiff sent the defendant a notice of some sort and a demand for a response, and that when the defendant did not receive the required loan payments in U.S. currency it repossessed the plaintiff's vehicle.

*Id.* at *3.

6

Not coincidentally, the instant case is also remarkably similar to *Thomas v. All In Credit Union*, No. 23-00215, 2023 WL 9197752 (S.D. Ala. December 7, 2023), *report and recommendation adopted*, 2024 WL 312682 (S.D. Ala. Jan. 25, 2024). As in this case, the plaintiff executed a power-of -attorney naming himself both principal and agent and sent the lender a series of documents instructing the lender "to transfer the principal's balance to the principal's account . . . for set off." *Id.* at *2. And keeping with the same theme, when the lender refused to accept the plaintiff's so-called "endorsed bill of exchange," his vehicle went "up for repossession." *Id.* at *3. While the plaintiff did not assert the exact same theory Wierckz asserts in this case, the court found dismissal with prejudice appropriate because "Thomas' amended complaint raises frivolous sovereign citizen claims that appear to be based on a theory that Thomas somehow has the ability to essentially convert a payment demand into legal tender and magically extinguish his debts." *Id.* at *8. Wierckz's theory here is not materially different, as he claims he has the ability to extinguish his debts to Greenstate simply through presentation of made-up, legal-sounding documents. Not so.

For the foregoing reasons, I recommend that Wierckz's amended complaint be dismissed with prejudice. Nonetheless, I will address the claims he asserts, which are easily dispatched.

    **1.**    **Breach of Conract**

Wierckz alleges that he performed under both loan agreements by making regular payments and "submitting lawful settlement tenders, including a Proposed Amendment to Contract and Notices of Claim to Interest with an opportunity to cure." (ECF No. 10 t PageID.47.) Wierckz further alleges that Greenstate received his notices but failed to apply them and did not formally reject them. (*Id.*) Wierckz fails to demonstrate that Greenstate breached any contract. It is undisputed that Wierckz defaulted on the loans and that he—not Greenstate—breached the loan

7

agreements. Moreover, Greenstate did not accept his so-called "lawful settlement tenders." Indeed, it had no obligation to do so.

### 2.    Unjust Enrichment

Wierckz alleges that Greenstate was unjustly enriched because it "used [Wierckz's] loan instruments to derive revenue or credit without disclosing or crediting any beneficial interest to [Wierckz]." (*Id.* at PageID.48.) He further alleges that Greenstate "retained the vehicle and all prior payments while refusing to apply the submitted tender or return unearned interest, resulting in double recovery." (*Id.*) This claim is meritless and subject to dismissal on both grounds cited by Greenstate. First, under both Illinois law, which applies to the manufactured home loan, and Michigan law, which applies to the pickup truck loan, the existence of an express contract covering the subject matter bars a claim for unjust enrichment. *See Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993) ("[A] contract will be implied only if there is no express contract covering the same subject matter."); *SwedishAmerican Hosp. Ass'n of Rockford v. Illinois State Med. Inter-Ins. Exchange*, 395 Ill. App. 3d 80, 108 (2009) (noting that "unjust enrichment is based on an implied contract, and it does not apply where there is a specific contract that governs the relationships of the parties"). Second, Greenstate has shown that Wierckz still owes substantial balances on both loans. (ECF No. 20-2 at PageID.212.) Wierckz failed to pay the entire loan balance, and it appears that the collateral will be insufficient to satisfy the outstanding balance and associated charges. Finally, Wierckz points to no provision of the loan agreements obligating Greenstate to pay or credit any amounts to Wierckz.

### 3.    Violation of Due Process

Next, Wierckz alleges that Greenstate violated his right to due process under the Fifth Amendment by repossessing his vehicle without legal process, opportunity for a hearing, or

judicial review. (*Id.*) This claim fails on two grounds. First, the Fifth Amendment "appl[ies] to and restrict[s] only the Federal Government and not private persons." *Public Utils. Comm'n v. Pollak*, 343 U.S. 451, 461 (1952). Greenstate is neither a federal government entity nor a state actor. Rather, it is a private company. Second, as explained in *Fogle v. Carmax Auto Finance*, No. 1:23-cv-468, 2023 WL 3821519 (W.D. Mich. May 17, 2023), *report and recommendation adopted*, 2023 WL 3816597 (W.D. Mich. June 5, 2023):

> The self-help remedy set forth in Michigan's version of the Uniform Commercial Code, Mich. Comp. Laws § 440.9609, codifies the well-recognized common-law remedy of self-help. *Hill v. Michigan Nat'l Bank of Detroit*, 58 Mich. App. 430, 436 (1975) (citing prior version). A creditor need not obtain a court order to avail itself of this remedy. *Hensley v. Gassman*, 693 F.3d 681, 688 (6th Cir. 2012) ("Gassman sought to repossess the Hensleys' Buick pursuant to section 9–609(2) of Michigan's version of the Uniform Commercial Code, which authorizes a creditor to use self-help, i.e., without a court order, to repossess collateral if it can be accomplished without breaching the peace.") Accordingly, self-help repossession "does not constitute state action within the meaning of the due process clause of the Fourteenth Amendment." *Hill*, 58 Mich. App. at 437. Moreover, in order to establish a due process violation—or a violation of any constitutional right for that matter—a plaintiff must show that the defendant was a state actor. *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009); *see also Krukemyer v. Forcum*, 475 F. App'x 563, 566 (6th Cir. 2012) ("Indeed, there is no constitutional right to be free from harm inflicted by private actors. A due process claim lies only against a governmental defendant."). Because Carmax and URA are not state actors, they cannot be held liable under Section 1983.

*Id.* at *2. Contrary to Wierckz's assertion, Greenstate was not required to go through the judicial process prior to resorting to self-help, and because it is not a state actor, it did not violate Wierckz's constitutional rights.

### 4. Retaliation

In his fourth claim, Wierckz alleges that Greenstate retaliated against him after he submitted "protected legal notices asserting contractual, equitable, and constitutional rights" by repossessing the pickup truck. He asserts that his protected conduct was asserting Fifth Amendment and Truth-in-Lending protections. (*Id.* at PageID.48–49.) This claim fails because, as

9

noted, the Fifth Amendment does not apply to Greenstate. In addition, the Truth in Lending Act does not contain an anti-retaliation provision. Thus, Wierckz fails to identify a legal source for his retaliation claim. Moreover, Wierckz presents no evidence showing that Greenstate's decision to repossess the pickup truck was motivated by anything other than its interest in securing the collateral to apply to the balance of the loan. Thus, this claim is subject to dismissal.

### 5.  FDCPA Claim

This two-paragraph claim fails because Wierckz fails to allege any fact to establish that Greenstate is a debt collector as defined by the FDCPA. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A creditor who uses a name other than its own to collect on its debts also qualifies as a debt collector under the FDCPA. *Id.*

Here, Greenstate was not a debt collector because the undisputed evidence shows that it was collecting its own debts and was not collecting its debts under another name. Moreover, apart from Wierckz's failure to show that Greenstate was a debt collector, his naked allegation that Greenstate misrepresented the status of the debt is simply a conclusory assertion that does not withstand Greenstate's motion for summary judgment.

### 6.  Securities Fraud/Wire Fraud

In Count V, Wierckz alleges that Greenstate violated the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), by continuing to use the loan documents for its own benefit after receiving Wierckz's formal notice revoking all powers of attorney previously granted. (*Id.* at PageID.49.) He further alleges that Greenstate violated 18 U.S.C. § 1343 through use of emails and electronic

communications across state lines to suppress Wierckz's objections and enforce its security interest. Wierckz's securities fraud fails for the simple reason that he does not allege that Greenstate sold him anything that qualifies as a security. As the court in *Harrison* observed in dismissing a similar securities fraud claim as frivolous:

> The facts Harrison has alleged, the documents he has attached to his complaints, and his testimony establish that this case does not involve any sale, attempted sale, or purchase of any security. This case involves a consumer retail installment contract -- nothing more. Harrison has not and cannot state a claim for fraud under the Securities Act based on this transaction.

2024 WL 4360626, at *8. The present claim fails for the same reason.

As for Wierckz's reliance on 18 U.S.C. § 1343, it is misplaced as Section 1343 is a criminal statute that does not provide a private right of action. *See Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) ("The district court also properly concluded that Saro possessed no private right of action against Brown for alleged violations of 18 U.S.C. §§ 1341 & 1343. Violations of these sections of the federal criminal code do not give rise to independent, private causes of action.").

### 7. Accounting and Declaratory Relief

Wierckz's seventh claim for an accounting and declaratory relief fails to allege a claim. These are both remedies, not causes of action. *See Friess v. City of Detroit*, No. 17-14139, 2019 WL 1379865, at *9 (E.D. Mich. Mar. 27, 2019) (declaratory and injunctive relief are remedies rather than causes of action); *Capital Equity Grp. v. Ripken Sports Inc.*, 744 F. App'x 260, (6th Cir. 2018) (claims for preliminary injunction, appointment of a receiver, and action on accounting were properly dismissed "because they are not standalone causes of action, but merely equitable remedies that rely on a valid contract"). As Wierckz fails to allege a viable cause of action, his requests for declaratory relief and an accounting should be dismissed.

### 8. Breach of Fiduciary Duty

In his final claim, Wierckz alleges that Greenstate owed him a fiduciary duty because he entrusted Greenstate with his personal financial instruments and, after Wierckz revoked any prior authorization via his durable power of attorney (appointing himself as his own agent) he submitted to Greenstate on March 17, 2025, Greenstate proceeded to realize value from Wierckz's financial instruments. "Under Michigan law, the general rule is that a lender owes no fiduciary duty to a borrower, and there is generally no fiduciary relationship between a lender and a borrower." *In re M.T.G., Inc.*, 646 B.R. 1, 105 (Bankr. E.D. Mich. 2022). Contrary to Wierckz's assertion, the loan documents were not his; they belonged to Greenstate. Thus, under the facts of this case Greenstate's relationship with Wierckz was nothing more than lender and borrower. Greenstate owed him no fiduciary duty.

### B.   Wierckz's Motion for Preliminary Injunction

Wierckz requests that the Court issue a preliminary injunction prohibiting Greenstate from selling or transferring the pickup truck and ordering Greenstate to return it to Wierckz immediately. (ECF No. 17 at PageID.143–44.) Because I have recommended that the Court grant Greenstate's motion for summary judgment and dismiss Wierckz's amended complaint with prejudice, I recommend that the Court deny his motion for a preliminary injunction as moot. Moreover, the factors applicable to preliminary injunctions weigh heavily against such relief, as Wierckz has no chance of success on his claims; issuance of a preliminary injunction would cause substantial harm to Greenstate by precluding it from enforcing its right to sell the pickup truck to satisfy, in part, the outstanding loan balance; and issuance of the requested relief would be contrary to the public interest in enforcing contracts by interfering with Greenstate's contractual rights. *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (listing

preliminary injunction factors); *see also Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 386 (6th Cir. 2023) (noting that "the public interest lies in enforcing contracts").

## IV.  Conclusion

For the foregoing reasons, I recommend that the Court **grant** Greenstate's Motion for Summary Judgment (ECF No. 20), **deny** Wierckz's motion for a preliminary injunction as moot, and **dismiss** Wierckz's amended complaint **with prejudice**.

Dated: August 7, 2025                                          /s/ Sally J. Berens
                                                               SALLY J. BERENS
                                                               U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).